```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
                                         :
NATIONAL UNION FIRE INSURANCE COMPANY    :
OF PITTSBURGH, PA,                       :
                                         :   05 Civ. 5262 (DLC)
                    Plaintiff,           :
                                         :   OPINION AND ORDER
          -v-                            :
                                         :
LIBERTY MUTUAL FIRE INSURANCE COMPANY,   :
                                         :
                    Defendant.           :
                                         :
-----------------------------------------X
```

Appearances:

For the Plaintiff:

Mitchell A. Stearn
Kevin M. Grace
Kathrin V. Smith
Nixon Peabody LLP
401 9th Street, N.W., Suite 900
Washington, D.C.  20004

For the Defendant:

Robert L. Hoegle
Nelson Mullins Riley & Scarborough LLP
101 Constitution Avenue, N.W., Suite 900
Washington, D.C.  20001

DENISE COTE, District Judge:

    This diversity action is a dispute between two insurance companies over their respective obligations to pay post-judgment interest on a $13.7 million dollar judgment against their mutual insured.  National Union Fire Insurance Company of Pittsburgh, PA ("National Union") seeks a declaratory judgment that it does not owe reimbursement to Liberty Mutual Fire Insurance Company

("Liberty Mutual") for Liberty Mutual's payment of post-judgment interest on April 6, 2005. National Union and Liberty Mutual have filed cross-motions for summary judgment. Because the language of both insurance agreements is clear and mandates that Liberty Mutual pay the entire amount of post-judgment interest, National Union's motion is granted and Liberty Mutual's motion is denied.

Background

The factual record in this action is largely undisputed. National Union and Liberty Mutual both issued insurance policies to Richfield Hospitality Services, Inc., a Delaware corporation headquartered in Colorado. Liberty Mutual's policy was the primary policy and provided a limit of $3 million in coverage for each occurrence. The National Union policy was an excess policy which provided up to $25 million of coverage for each occurrence in excess of any underlying insurance.

Both policies contained language addressing post-judgment interest. Liberty Mutual's policy stated in relevant part that:

> <u>We will pay</u>, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:
>
> ....
> <u>All interest on the full amount of any judgment that accrues</u> after entry of the judgment and <u>before we have paid, offered to pay, or deposited in court the part of the judgment</u> that is within the applicable limit of the insurance.

2

> These payments will not reduce the limits of the insurance.

(Emphasis Supplied). National Union's policy stated in relevant part that:

> When we assume the defense of any claim or suit:
> ....
> <u>We will pay the following to the extent that they are not included in the underlying policies listed in the Schedule</u> of Underlying Insurance or in any other insurance providing coverage to the Insured:
> ....
> all interest that accrues after entry of judgment and before we have paid, offered to pay or deposited in court the part of the judgment that is within our applicable Limit of Insurance.

(Emphasis Supplied). National Union's Schedule of Underlying Insurance attached to its policy listed the Liberty Mutual policy.

On January 29, 1999, professional boxer Fernando Ibarra Maldonado ("Maldonado") collapsed in his dressing room after a boxing match held at a hotel operated by Richfield in St. Louis, Missouri. Maldonado sued several defendants for negligence, including Richfield, in Missouri state court. Liberty Mutual retained counsel to represent Richfield during the trial. On December 11, 2001, a jury rendered a verdict in favor of Maldonado for $13.7 million. <u>See</u> <u>Maldonado v. Gateway Hotel Holdings, L.L.C.</u>, 154 S.W.3d 303, 306 (Mo. Ct. App. 2003).

Richfield appealed the trial court decision. Richfield was required to file a supersedeas bond of $16 million during the pendency of the appeal, $2.3 million of which represented

3

security for post-judgment interest. Liberty Mutual filed a bond of $3 million, which was the limit of its insurance policy, and National Union filed a bond for the remaining $13 million. National Union retained appellate counsel to work with the trial counsel that had been retained by Liberty Mutual.

The parties in the Maldonado litigation engaged in unsuccessful settlement discussions during the pendency of the appeal. During those discussions Maldonado's counsel indicated that he would not take much less in settlement than the $13 million awarded in the lower court. On October 7, 2003, the trial court decision was affirmed by the Missouri Court of Appeals. See id. at 312. On December 31, 2003, Richfield applied to have the case transferred to the Missouri Supreme Court and on January 27, 2004, the case was transferred.

On June 4, 2004, the trial counsel retained by Liberty Mutual sent Maldonado's counsel a letter with a settlement offer in the form of a high/low agreement. Under the offer Liberty Mutual would pay $500,000.00 if the lower court decision was reversed or remanded by the Missouri Supreme Court but the plaintiff would accept $3 million if the verdict was upheld. The offer was rejected by Maldonado's counsel, but remained open during the pendency of the appeal.

On February 16, 2005, the Missouri Supreme Court transferred the case back to the Missouri Court of Appeals. The Missouri

Court of Appeals adopted its prior decision, and on March 7, 2005 issued a mandate and closed its case file.

After the Missouri Court of Appeals had closed its file, Liberty Mutual and National Union began to dispute the issue of post-judgment interest. On March 22, 2005, Liberty Mutual tendered its $3 million policy limit to Mr. Maldonado's counsel in Missouri. On April 7, 2005, Liberty Mutual tendered $3,749,679.90, the full amount of post-judgment interest due, to Mr. Maldonado's counsel.

On April 11, 2005, Liberty Mutual brought an action against National Union in the United States District Court for the District of Kansas seeking reimbursement for its April 7 payment ("Kansas Action"). On June 2, 2005, National Union brought this action against Liberty Mutual seeking a declaratory judgment that it does not owe reimbursement to Liberty Mutual. Liberty Mutual moved to dismiss this action under the "first-filed" rule and as improper under the Federal Declaratory Judgment Act. Liberty Mutual's motion was denied and the action was stayed. <u>Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Liberty Mut. Fire Ins. Co.</u>, 05 Civ. 5262 (DLC), 2005 WL 2209110, at *1 (S.D.N.Y. Sept. 7, 2005). On October 21, 2005, the Kansas Action was transferred to this Court and on January 19, 2006, was dismissed on consent of both parties. In March, the parties filed cross-motions for summary judgment.

Discussion

The Federal Declaratory Judgment Act empowers federal courts to declare "the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. National Union seeks a declaratory judgment that "Liberty Mutual is obligated to pay all post-judgment interest accrued in the Maldonado action through March 22, 2005."

Summary judgment under Rule 56, Fed. R. Civ. P., is appropriate only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 465 (2d Cir. 2000). The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination the court must view all facts in the light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Summary judgment should only be granted when "no reasonable trier of fact could find in favor of the non-moving party." James v. New York Racing Ass'n, 233 F.3d 149, 152 (2d Cir. 2000)(citation omitted).

A.  Choice of Law

The parties disagree as to whether Colorado or Missouri law

governs this dispute.  In determining which state's substantive law to apply, the choice of law rules of the forum state, New York, must be applied.  Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487 (1941).

The first step in deciding a potential choice of law issue under New York law is to determine whether there is an actual conflict between the laws of the two jurisdictions involved. Globalnet Financial.com, Inc. v. Frank Crystal & Co., Inc., ___ F.3d ___, 2006 WL 1195923, at *4 (2d Cir. May 5, 2006).  Because the law of the two jurisdictions is in agreement on all material issues of law, it is not necessary to decide which state's law governs the dispute.

B. Obligation for Post-Judgment Interest

Under both Colorado and Missouri law, insurance agreements are construed in accordance with the law of contracts.  F.D.I.C. v. Amer. Cas. Co., 843 P.2d 1285, 1289 (Colo. 1992); Transit Casualty Co. v. Certain Underwriters at Lloyd's of London, 963 S.W.2d 392, 396 (Mo. Ct. App. 1998).  Where their meaning is clear, insurance agreements are enforced as written.  Fire Ins. Exchange v. Rael by Rael, 895 P.2d 1139, 1142 (Colo. Ct. App. 1995); Missouri Employers Mutual Ins. Co. v. Nichols, 149 S.W.3d 617, 625 (Mo. Ct. App. 2004).  Liberty Mutual does not dispute that the plain meaning of its policy obligates it to pay post-

7

judgment interest on the full judgment.  The language of the policy is unambiguous: "[a]ll interest of the <u>full</u> amount of any judgment."  (Emphasis Supplied).  Nor does Liberty Mutual contest that the plain meaning of National Union's policy limits its obligation to post-judgment interest that is not paid by underlying insurers, in this case Liberty Mutual.  Instead, Liberty Mutual offers four arguments to support its view that the interest payment should be apportioned between the two insurers, despite the plain meaning of the policies.  None of its arguments has merit.

First, Liberty Mutual points out that National Union is not a party to the insurance agreement between Richfield and Liberty Mutual and argues that National Union may not rely on a agreement to which it is not a party.  There is not unfairness in holding Liberty Mutual to the terms of its own policy.  Liberty Mutual's own motion for summary judgment requires construction of the Liberty Mutual policy.

Second, Liberty Mutual argues that the fact that it did not tender its policy limit earlier should be excused because to do so would have been a futile act.  Under both Colorado and Missouri law, a party to a contract will be excused from performing under a contract where such performance has been rendered futile for purposes of the contract because it is clear the other party does not plan on performing its own obligations.

8

See Highlands Ranch University Park, LLC v. Uno of Highlands Ranch, Inc., 129 P.3d 1020, 1024 (Colo. Ct. App. 2005); Mirian Inv. Co. v. Medical West Bldg. Co., 414 S.W. 2d 297 (Mo. 1967).[1] Liberty Mutual has failed to offer any evidence that Richfield failed to perform its obligations under the Liberty Mutual policy.[2] Liberty Mutual does present evidence that during the pendency of the appeal Maldonado's counsel would not have settled the case for much less than $13 million, but that fact is irrelevant to the question of whether Liberty Mutual continued to be obligated to Richfield under its policy.

Third, Liberty Mutual argues that in a dispute between insurers a court should look beyond the contracts at issue and turn to principles of equity in determining how to apportion responsibility for post-judgment interest. Liberty Mutual fails to present any law to support its position that the equitable concerns it identifies allow a court to ignore the unambiguous

---

[1] Liberty Mutual also points to Higley v. Kidder, Peabody & Co., Inc., 920 P.2d 884 (Colo. Ct. App. 1996), which addressed the issue of whether a class member who had not filed a proof of claim could challenge an allocation plan. Higley addressed a possible precondition for asserting "important rights," the right to appeal a judicial decision, and is far afield of the issues presented in this litigation. Id. at 890-91.

[2] In characterizing the act of tendering its policy limit as futile, Liberty Mutual only focuses on the period of time after the trial court found against Richfield. It fails to introduce any evidence as to whether Maldonado would have agreed to a settlement for $3 million or less if that offer had been made before the trial or the significant jury award in Maldonado's favor.

language of the two agreements. Colorado and Missouri courts have turned to equitable principles to interpret insurance agreements, but only when the plain meaning of an agreement was contested. See Security Ins. Co. v. Houser, 552 P.2d 308, 310 (Colo. 1976); United States Fidelity & Guaranty Co. v. Safeco Ins. Co., 555 S.W.2d 848, 853 (Mo. Ct. App. 1977). Liberty Mutual has not identified any cases decided under either Colorado or Missouri law that support the proposition that equitable principles may override the unambiguous language of an insurance policy.

Fourth, Liberty Mutual argues that its high/low settlement offer to Maldonado's counsel in June 2004 constitutes an offer to pay the judgment under its policy, and thus relieves it of the obligation to pay all post-judgment interest that accrued after the offer was made. Liberty Mutual's policy stated that it would only be liable for post-judgment interest until "we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of the insurance." The word "offer" was not defined in the Liberty Mutual agreement.

Under both Colorado and Missouri law, words in insurance contracts are give their ordinary meaning. See State Farm Mut. Auto Ins. v. Stein, 940 P.2d 384, 387 (Colo. 1997); Missouri Employers, 149 S.W.3d at 625. Under its ordinary meaning, the tender of an offer places the other party in a position to accept

or reject the thing being offered. Oxford English Dictionary (Draft Rev. Mar. 2004) (defining offer as "[t]o present or tender for acceptance or refusal; to hold out (a thing) to a person to take if he or she so desires.") Liberty Mutual did not offer its policy limit to Maldonado until March 22, 2005. The high/low offer in June 2004 was conditional. The full policy would only have been paid if the jury's verdict were upheld. At most, Liberty Mutual's offer was an unconditional offer to pay $500,000, well short of its policy limit of $3 million. Liberty Mutual's high/low settlement was not an offer to pay the judgment under its policy and did not relieve it of the obligation to pay post-judgment interest.

In sum, none of Liberty Mutual's arguments overcome the plain meaning of the insurance agreements. Liberty Mutual is obligated to pay the full amount of post-judgment interest.

## Conclusion

National Union's motion for summary judgment is granted. Liberty Mutual's motion for summary judgment is denied. National Union shall submit a proposed judgment by June 30, 2006. Liberty Mutual shall submit any objections by July 7.

SO ORDERED:

Dated: New York, New York
June 22, 2006

_____
DENISE COTE
United States District Judge

11